Kyle Woodard (SBOT 24102661)
**KANE RUSSELL COLEMAN LOGAN PC**
901 Main Street, Suite 5200
Dallas, Texas 75202
Telephone: (214) 777-4200
Email: kwoodard@krcl.com

Jim D. Aycock (SBOT 24034309)
**THE AYCOCK LAW FIRM, PLLC**
5850 San Felipe St., Suite 500, #1020
Houston, Texas 77057
Telephone: (254) 253-5460
Email: jim@aycock.law

***Counsel for Security State Bank & Trust***

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| **JETALL/CROIX PROPERTIES, LP,** | § | Case No. 26-38421 (JPN) |
| | § | |
| Debtor. | § | Chapter 11, Subchapter V |

**SECURITY STATE BANK & TRUST'S MOTION FOR RELIEF FROM THE AUTOMATIC STAY AS TO REAL PROPERTY LOCATED AT <u>2232 SWIFT BOULEVARD, HOUSTON, TEXAS 77030</u>**

> **This is a motion for relief from the automatic stay. If it is granted, the movant may act outside of the bankruptcy process. If you do not want the stay lifted, immediately contact the moving party to determine if the parties can reach an agreement. If you cannot reach an agreement, you must file a written response. If a hearing is required, you must send a copy to the moving party at least 7 days before the hearing. If you have not reached an agreement, you must attend the hearing. Evidence may be offered at the hearing and the court may rule.**
>
> **Represented parties should act through their attorney.**
>
> **If no written opposition is filed, relief may be granted without a hearing. If relief has not already been granted, the hearing on this matter will be on <u>December 1, 2026, at 11:00 a.m.</u> in Courtroom 403, Bob Casey U.S. Courthouse, 515 Rusk Ave, Houston, TX 77002.**

Security State Bank & Trust ("**<u>SSBT</u>**") files this Motion for Relief from the Automatic Stay (the "**<u>Motion</u>**") as to real property located at **<u>2232 Swift Boulevard, Houston, Texas 77030</u>** (the "**<u>Property</u>**"), pursuant to 11 U.S.C. §§ 362(d)(1), (d)(2), and (d)(4) and Fed. R. Bankr. 4001, and respectfully states as follows:

 15069665v1 (76037.00002.000)

## I. PRELIMINARY STATEMENT

1. This case is the latest episode in Ali Choudhri's relentless campaign to stop SSBT from foreclosing its senior deed of trust lien on the Property. Jetall/Croix Properties LP ("**Jetall**" or the "**Debtor**") filed this case minutes before SSBT was set to commence its foreclosure sale, for no other purpose than to stop the foreclosure. Jetall is not even the record title owner of the Property. Record title is held by MCITBE LLC ("**MCITBE**"), another Choudhri-affiliated entity whose own Chapter 11 case was dismissed with prejudice last month because it, too, was filed in bad faith. *See In re: MCITBE LLC*, No. 26-32580-mvl11 (Bankr. N.D. Tex.).

2. Jetall is owned 50% by Ali Choudhri and 50% by an individual named Michael Croix. Jetall is SSBT's borrower and the prior owner of the Property. MCITBE is an entity purportedly owned by Choudhri's mother, but of which Choudhri is a director, that held a second-lien deed of trust on the Property. MCITBE foreclosed its second-lien deed of trust interests and took title to the Property in March 2026. Three months later, MCITBE filed a voluntary chapter 11 petition in the Northern District of Texas. On October 19, 2026, Judge Larson entered an Order dismissing MCITBE's chapter 11 case with prejudice to refiling for 180 days (**Ex. A**) (the "**Dismissal Order**"). At the time of dismissal, SSBT had already posted the Property for a November 3 foreclosure sale, with Judge Larson's permission.

3. Jetall's petition was a last-ditch effort—Plan C—to stop SSBT's foreclosure. Plans A and B were (a) MCITBE and Choudhri's jointly filed emergency motions for Judge Larson to vacate, amend, or stay the Dismissal Order and reinstate MCITBE's chapter 11 case (**Exs. C–D**), and (b) two different emergency TRO applications filed in Harris County District Court—one filed by MCITBE (**Ex. H**) and one filed by Choudhri on behalf of Jetall (**Ex. I**). Judge Larson convened a virtual hearing at 9:00AM on November 3 to announce her ruling on the papers, after which the

Harris County ancillary judge took up the TRO applications. The events of that morning establish beyond a shadow of doubt that **this case was filed to stop SSBT's foreclosure**:

- Nov. 3, approx. 9:00AM: Judge Larson issued bench ruling denying MCITBE and Choudhri's emergency motions to vacate, amend, and/or stay her October 19 Order dismissing MCITBE's chapter 11 case with prejudice (**Ex. F**).[1] The hearing concluded around 9:30AM.

- Approx. 9:30AM: Harris County judge denied MCITBE and Choudhri's TRO applications (**Exs. J–K**). The hearing concluded around 10:00AM. At the conclusion of the hearing, Choudhri asked the judge to delay the foreclosure for some amount of time so that another bankruptcy could potentially be filed (**Ex. M**, at 24).

- 10:00AM: SSBT's foreclosure sale was scheduled to occur between 10:00am and 4:00pm (**Ex. BB-7**). SSBT was unable to commence the sale promptly at 10:00am due to the TRO hearings in Harris County District Court.

- Approx. 10:05AM: Choudhri emails SSBT's counsel stating that Jetall filed a chapter 11 petition (**Ex. N**).[2]

- Approx. 10:17AM: Debtor's counsel emails SSBT counsel advising of Jetall's petition, stating that the "automatic stay… is in effect," and asking counsel to "confirm immediately that the foreclosure sale… has been stopped" (**Ex. O**).

Clearly, if either Judge Larson or the Harris County ancillary judge had granted relief to stop SSBT's foreclosure, this case would not have been filed.

4. Moreover, in addition to this case being filed in bad faith, this is now the ***second*** bankruptcy case filed to hinder, delay, or defraud SSBT and stop SSBT from lawfully foreclosing on this specific Property; SSBT is not adequately protected; and Jetall has no equity in the Property (because it does not own the Property, obviously, but also because SSBT's secured claim exceeds the value of the Property) and the Property is not necessary to any effective reorganization by

[1] **Exhibit F**, the November 3 hearing transcript, will be filed as a supplement to this Motion once it is received.

[2] The CM/ECF email forwarded by Debtor's counsel reflects that the petition was filed at approx. 10:14am, indicating that it had not in fact been filed at the time of Choudhri's 10:05am email.

Jetall. Accordingly, SSBT is entitled to stay relief on three independent grounds: § 362(d)(4); § 362(d)(1); and § 362(d)(2).

## II. RELIEF REQUESTED

5. SSBT hereby requests entry of an order terminating the automatic stay as to the Property and authorizing SSBT to immediately foreclose on the Property and exercise all other available rights and remedies available under its Loan Documents and applicable law, prohibiting the Debtor and its insiders and affiliates from transferring the Property or interfering in any way with SSBT's foreclosure or its exercise of any additional rights and remedies, and granting related relief. SSBT seeks stay relief on three independent grounds: **first**, under § 362(d)(4)(A) and (B), because this case is part of a scheme to delay, hinder, or defraud SSBT involving both multiple bankruptcy filings affecting the Property *and* a non-consensual transfer of the Property; **second**, for "cause" under § 362(d)(1), because Jetall filed this case in bad faith and SSBT is not adequately protected; and **third**, under § 362(d)(2), because Jetall has no equity in the Property and the Property is not necessary to any effective reorganization. SSBT further seeks prospective *in rem* relief under § 362(d)(4).

6. SSBT intends to file a separate request for expedited consideration of this Motion, in accordance with this Court's local rules and procedures. SSBT seeks to foreclose on the Property on the next available sale date, which is December 1, 2026. Texas law requires posting the Property for foreclosure at least 21 days prior to the sale, *see* Tex. Prop. Code § 51.002(b), which is November 10, 2026. Thus, SSBT seeks entry of (a) an interim order authorizing it to post the Property for foreclosure no later than **November 10, 2026**; and (b) a final order granting this Motion and authorizing SSBT to foreclose on **December 1, 2026**.

## III. JURISDICTION AND VENUE

7. The U.S. Bankruptcy Court for the Southern District of Texas, Houston Division (this "**Court**"), has jurisdiction over this matter under 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(G). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief sought in this Motion are sections 362(d)(1), (d)(2), and (d)(4) of title 11 of United States Code (the "**Bankruptcy Code**") and rule 4001 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

## IV. FACTUAL BACKGROUND

### A. SSBT's Loan and First-Priority Lien on the Property

8. In October 2023, SSBT made a loan to Jetall secured by a first-priority deed of trust lien on the Property (the "**Loan**"). SSBT's Loan and liens on the Property are evidenced by, *inter alia*, that certain Real Estate Lien Note dated October 25, 2023, made by Jetall payable to SSBT in the original principal amount of $1,707,842.40 (**Ex. U**) (the "**Note**"), and that certain Deed of Trust dated October 25, 2023, by Jetall, as grantor, Daniel W. Kemp, as trustee, and SSBT, as beneficiary [Harris County RP-2023-412498] (**Ex. V**) (the "**Deed of Trust**," and together with the Note and all other documents evidencing, securing, governing, or otherwise relating to the Loan, each as modified, amended, or supplemented, the "**Loan Documents**"). The Loan originally matured on October 25, 2024, but was extended on two occasions: first pursuant to the Extension of Real Estate Note and Lien dated effective October 25, 2024 (**Ex. W)**; then pursuant to the Extension of Real Estate Note and Lien dated effective January 23, 2025 (**Ex. X)**.

9. Jetall has not made any payments to SSBT since July 2025. The Loan Documents require Jetall to make principal and interest payments of $53,815.56 per month, commencing August 23, 2025 (*see* **Ex. X**); prior to that time, interest-only payments were required each month.

10. SSBT accelerated the Note on or about October 28, 2025 (**Ex. Z**). Interest has since accrued at the default rate of 18% per annum, increased from 7.5% per annum prior to acceleration. As of November 3, 2026, the date of Jetall's petition, SSBT is owed at least the following amounts pursuant to the Loan Documents:

| | |
|---|---|
| Principal balance | $1,858,752.43 |
| Interest | $409,452.08 |
| Legal fees through Sept. 2026 | $423,947.40 |
| Legal fees - Oct. 2026 | **[TBD]**[3] |
| Other charges and fees | $7,172.11 |
| **TOTAL DUE as of 11/3/26:** | **$2,699,324.02** |
| Per diem interest accrual: | $929.38 |

**B. MCITBE's Second-Lien Deed of Trust**

11. At the time of SSBT's Loan, Jetall also executed a Second Lien Real Estate Note payable to MCITBE in the original principal amount of $433,946.26 (**Ex. CC**) and a second-lien Deed of Trust in favor of MCITBE (**Ex. DD**). MCITBE's Deed of Trust is expressly subordinated to SSBT's senior lien and was recorded after SSBT's first-lien Deed of Trust.

12. MCITBE became the record owner of the Property in March 2026, after foreclosing its second-lien Deed of Trust. On February 10, 2026, MCITBE recorded a Substitution of Trustee [Harris County RP-2026-50125] appointing Xerxes (Zak) Patel as substitute trustee (**Ex. EE**) and a Notice of Substitute Trustee's Sale [Harris County RP-2026-50126] (**Ex. FF**).

13. On February 24, 2026, Xerxes (Zak) Patel resigned as MCITBE's substitute trustee [Harris County RP-2026-78211] (**Ex. GG**).

14. On March 11, 2026, MCITBE recorded a Substitute Trustee's Deed dated effective March 3, 2026, by Manfred Sternberg [Harris County RP-2026-91935] stating that the Property

[3] SSBT estimates at least $20,000 for legal fees incurred during the month of October 2026, and that the total payoff as of November 3, 2026, is at least $2.72 million or more.

was conveyed to MCITBE at a foreclosure sale conducted on March 3, 2026 (**Ex. HH**). The Substitution of Trustee appointing Mr. Sternberg to conduct the March 3 foreclosure sale was not recorded until two months later, on May 5, 2026 [Harris County RP-2026-174171] (**Ex. II**).

### C. Schemes to Thwart SSBT's Foreclosures

15. SSBT has been attempting repeatedly to foreclose on the Property since its original posting in January 2026. Each time, however, its efforts have been thwarted by one of Choudhri's various schemes, including numerous *ex parte* temporary restraining orders ("**TRO**") and multiple bankruptcy filings. SSBT has now posted the Property for foreclosure seven (7) different times (**Ex. BB**) and has yet to be able to foreclose.

#### i. Ex Parte Temporary Restraining Orders

16. Jetall obtained the initial *ex parte* TRO stopping SSBT's February 2026 foreclosure (**Ex. P**), but the order was vacated upon the court finding that counsel purporting to represent Jetall, Justin Rayome, did not have authority to do so (**Ex. Q**).[4]

17. SSBT then re-posted the Property for an April 7 foreclosure sale.[5] On the morning of April 7, shortly before commencing the sale, SSBT received notice of a second *ex parte* TRO; but this time the TRO was issued for MCITBE (**Ex. R**).[6] Unbeknownst to SSBT, MCITBE had foreclosed its second-lien interest in the Property in March 2026, as described above, which SSBT later discovered through its own due diligence after receiving notice of the second TRO. MCITBE filed for the second TRO on April 1 and it was entered by the Court on April 2, but SSBT was not

---

[4] *Jetall Croix Properties, LP v. Security State Bank & Trust*, Cause No. 2026-06827, 80th Judicial District Court of Harris County, Texas.

[5] The initial TRO caused SSBT to miss the 21-day window to post for a March 3 foreclosure.

[6] *MCITBE LLC v. Gribble and Security State Bank & Trust*, Cause No. 2026-22035, 129th Judicial District Court of Harris County, Texas.

given notice of it until April 7, shortly before commencing its foreclosure sale. The court granted SSBT's emergency motion to vacate the second TRO (**Ex. S**).

18. MCITBE obtained a third TRO in May 2026 (**Ex. T**), which expired by its own terms when MCITBE abandoned it and elected to file bankruptcy instead of proceeding with a court-ordered temporary injunction hearing to avoid SSBT's July 2026 foreclosure sale.

**ii. MCITBE's Chapter 11 Case**

19. On June 10, 2026, MCITBE filed a voluntary Chapter 11 (SubV) petition in the Northern District of Texas, Dallas Division, assigned to Judge Larson (**Ex. G**). *In re: MCITBE LLC*, No. 26-32580-mvl11, ECF #1 (Bankr. N.D. Tex.).

20. SSBT filed a Motion for Relief from the Automatic Stay [No. 26-32580, ECF #22 and #90] under § 362 (d)(4), because MCITBE filed the case as part of a scheme to hinder, delay, and defraud SSBT that involved a non-consensual transfer of the Property, *i.e.*, MCITBE's second-lien foreclosure in March 2026, and under § 362(d)(1) for "cause," because MCITBE filed the case in bad faith to preclude SSBT from foreclosing on the Property.

21. The United States Trustee filed a Motion to Dismiss the case under § 1112(b) with prejudice to refiling for 180 days [No. 26-32580, ECF #113].

22. The bankruptcy court heard the U.S. Trustee's Motion to Dismiss on October 15, 2026. The court granted the Motion and dismissed the case with prejudice to refiling for 180 days, finding cause under § 1112(b)(4)(E), (F), (G), and (H) ***and a lack of good faith in MCITBE's prosecution of the case***. Attached hereto as **Exhibit B** is the transcript of the witness testimony and the court's ruling from the hearing.[7]

---

[7] *See* **Ex. B**, at 38 (finding the case "disturbing to the Court from the get-go," with nothing "ever done timely" and, even if timely, not "done properly"); *id.* at 38 ("Conflicts abound" in the case); *id.* at 39 (identifying the U.S. Trustee's grounds as "independent grounds for dismissal" and finding "the conflicts are pervasive"); *id.* at 41–42 (setting the standard under 11 U.S.C. § 1112 that "cause" for dismissal "can include a finding that the debtor's filing for relief is

23. Judge Larson entered the Dismissal Order (as defined above) [No. 26-32580, ECF #228] on October 19, 2026. Prior to the dismissal, the court had authorized SSBT to post the Property for a November 3, 2026 foreclosure sale and, with that date in mind, set SSBT's Motion to Lift Stay for final hearing on October 26, 2026, which hearing was obviously mooted upon entry of the Dismissal Order.

### iii. Efforts to Stop SSBT's November 3 Foreclosure after the Dismissal with Prejudice of MCITBE's Chapter 11 Case

24. This bankruptcy case was Choudhri's last-ditch effort to stop SSBT's November 3 foreclosure, after the two prior attempts failed.

25. On November 1, 2026, Choudhri and MCITBE filed joint emergency motions to vacate or amend, and stay the effects of, the bankruptcy court's Dismissal Order (**Exs. C–D**), ***for the expressly stated purpose of stopping SSBT's foreclosure***. SSBT filed a Response in Opposition to both Motions [No. 26-32580, ECF #236]. Choudhri and MCITBE requested an emergency hearing on November 2, but Judge Larson informed the parties that the court would rule on the papers and set a hearing for 9:00am on November 3 to announce its ruling.

26. In addition to the emergency motions filed with Judge Larson, on November 2, 2026, MCITBE filed a "Renewed" Emergency Application for yet another TRO in the Harris County District Court (**Ex. H**). Choudhri also filed his own separate Emergency Application on

---

not in good faith" (citing *In re NRA*, 628 B.R. 262, and *In re Little Creek Dev. Co.*, 779 F.2d 1068)); *id.* at 42 ("[A] Chapter 11 petition is not filed in good faith unless it serves a valid bankruptcy purpose."); *id.* at 43 (finding the Debtor's schedules "filed late, and so at some point were therefore incomplete," reflecting "a pattern of reckless and cavalier disregard for the truth" (citing 11 U.S.C. § 521; *Unruh v. Tow*; *In re Mitchell*, 102 F. App'x 860)); *id.* at 44 (finding the changing positions of the Debtor were "for the purposes of delay" and "abusive of the bankruptcy process"); *id.* at 45 ("[T]he constant filings and the constant updates to filings are indicative of bad faith and indicative of abuse of process."); *id.* at 47 (finding "failure to prosecute the case in good faith without undue delay," plus failures to notice and appear at the § 341 meeting twice and to timely file); *id.* at 48 ("[T]he lack of good faith in prosecuting this case . . . calls for dismissal," finding "both a lack of good faith and … a futility" (citing *Humble Place Joint Venture*, 936 F.2d 814)); *id.* at 49 (finding the Debtor is not entitled to "the vast benefits … given to good-faith bankruptcy debtors," and dismissing under 11 U.S.C. § 1112(b)(4)(E)–(H)); *id.* at 49–50 (finding "the Bankruptcy Code was … abused in this case" and dismissing with prejudice for 180 days).

behalf of Jetall (**Ex. I**). Expecting from prior experience that the applications would be filed, SSBT's counsel was waiting in the courtroom when the ancillary judge called the matters that afternoon. After SSBT's counsel apprised the court of the pending motions before Judge Larson, the judge continued the matters until the next morning, after Judge Larson's scheduled bench ruling (**Ex. L**, Nov. 2 Hr'g Tr.).

27. The next morning, November 3, 2026, at 9:00am, Judge Larson issued her ruling denying all relief sought by Choudhri and MCITBE in their emergency motions to vacate, amend, or stay the Dismissal Order, rehashing and reiterating the extensive and pervasive evidence of bad faith that plagued MCITBE's chapter 11 case from the start (**Ex. F**). The hearing concluded around 9:30am.

28. After Judge Larson's hearing was concluded, the parties convened before the Harris County ancillary judge to take up MCITBE's emergency TRO applications. The judge denied both applications (**Exs. J–K**), and the hearing concluded around 10:00am. At the conclusion of the hearing, Choudhri asked the judge to at least delay the foreclosure to allow time for another bankruptcy to be filed (**Ex. M**, at 24), which was not a mystery to anyone in attendance.

29. SSBT was unable to commence the foreclosure sale promptly at 10:00am, due to the TRO hearings in the Harris County District Court.

30. At 10:05am, Choudhri emailed SSBT's counsel that Jetall had filed a chapter 11 petition (**Ex. N**). At 10:17am, Debtor's counsel, Ms. Courtney Vincent, sent a similar email asserting that the "automatic stay… is in the effect" and asking SSBT's counsel to "confirm immediately that the foreclosure sale… has been stopped and that the substitute trustee has been notified" (**Ex. O**).

 15069665v1 (76037.00002.000)

31. Ms. Vincent is the same attorney that filed MCITBE and Choudhri's November 1 emergency motions for Judge Larson to vacate or amend the Dismissal Order, because MCITBE would lose its only asset, the Property, if SSBT's November 3 foreclosure was allowed to proceed (see **Ex. D**). Two days later, after those motions were denied, Ms. Vincent filed Jetall's Voluntary Petition and Schedules [ECF #1] stating that ***Jetall's*** only asset is, too, the Property (**Ex. JJ**, at 5–13 (Schedule A/B)). Ms. Vincent has prosecuted two different bankruptcy proceedings for two different debtor-entity clients (MCITBE and Jetall) to stop the foreclosure of a single Property, in a span of only two days with no intervening transfer of the Property.

32. Not only is this the second bankruptcy cased filed to stop a foreclosure on the same Property, but it could also not be more clear that this case was filed in bad faith for the sole purpose of stopping SSBT's foreclosure – just as Judge Larson found for MCITBE.

## V. ARGUMENTS AND AUTHORITIES

33. The Court should grant SSBT relief from the automatic stay pursuant to § 362(d)(4) of the Bankruptcy Code, because the Petition was filed as part of a scheme to delay, hinder, and/or defraud SSBT that involved both (A) a non-consensual, pre-petition transfer of the Property and (B) multiple bankruptcy filings. 11 U.S.C. § 362(d)(4)(A)-(B).

34. Alternatively, the Court should lift the automatic stay for "cause" pursuant to § 362(d)(1), because Jetall did not file this case in good faith, and because SSBT's lien interests are not adequately protected. 11 U.S.C. § 362(d)(1).

35. Alternatively, the Court should lift the automatic stay pursuant to § 362(d)(2), because Jetall has no equity in the Property and the Property is not necessary to any effective reorganization. 11 U.S.C. § 362(d)(2).

**A. The Stay Should Terminate under § 362(d)(4) Because This Case is Part of a Scheme to Hinder, Delay, and Defraud SSBT Involving Multiple Bankruptcy Filings and a Non-Consensual Transfer of the Property**

36. Section 362(d)(4) of the Bankruptcy Code mandates relief from the automatic stay under the circumstances of this case. Section 362(d)(4) states in relevant part as follows:

> (d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay…— … (4) with respect to a stay of an act against real property under subsection (a), by a creditor whose claim is secured by an interest in such real property, if the court finds that the filing of the petition was part of a scheme to delay, hinder, ***or*** defraud creditors that involved either—
>
> (A) transfer of all or part ownership of, or other interest in, such real property without the consent of the secured creditor or court approval; ***or***
>
> (B) multiple bankruptcy filings affecting such real property.

*See* 11 U.S.C. § 362(d)(4) (emphasis added). SSBT, as the first-lien deed-of-trust holder, is a creditor whose claim is secured by an interest in the Property and is entitled to invoke the statute. *In re Williams*, 533 B.R. 557, 564–65 (Bankr. N.D. Tex. 2015).

37. "When a court grants relief from the automatic stay pursuant to 11 U.S.C. § 362(d)(4), it gives creditors *in rem* relief from the automatic stay such that the order is binding in any bankruptcy case filed in the next two years purporting to affect the same real property." *In re Dorsey*, 476 B.R. 261, 265 (Bankr. C.D. Cal. 2012); *In re First Yorkshire Holdings, Inc.*, 470 B.R. 864, 871 (B.A.P. 9th Cir. 2012).

38. To obtain relief under § 362(d)(4), the Court must find three elements to be present:

> (1) the debtor's bankruptcy filing was part of a scheme;
>
> (2) the object of the scheme was to delay, hinder, or defraud creditors; and
>
> (3) the scheme involved ***either*** (a) the transfer of some interest in the real property without the secured creditor's consent or court approval, ***or*** (b) multiple bankruptcy filings affecting the property.

*In re First Yorkshire Holdings, Inc.*, 470 B.R. at 870; *In re Jackson*, 672 B.R. 693, 711 (Bankr. E.D. Mich. 2025). The statute was amended in 2010 to change the standard from the conjunctive "delay, hinder, ***and*** defraud" to the disjunctive "delay, hinder, ***or*** defraud," meaning SSBT must only establish a scheme for one of those purposes, and one of the two statutory predicates. *In re JCP Props., Ltd.*, 540 B.R. 596, 619–20 (Bankr. S.D. Tex. 2015); *In re Williams*, 533 B.R. 564, n. 5.

39. The Bankruptcy Code does not define "scheme," however, in the context of section 362(d)(4), this Court has interpreted the term to mean "a plan or program of action." *In re Young*, No. 06-80534, 2007 WL 128280, at *9 (Bankr. S.D. Tex. Jan. 10, 2007) (citing MERRIAM–WEBSTER DICTIONARY 637 (Sidney Landau ed., Trident Press 1998)). Courts have also defined a scheme as "an intentional artful plot or plan to delay, hinder or defraud creditors," which can be established by extrapolation from circumstantial evidence. *In re Dorsey*, 476 B.R. at 266 (citing *In re Duncan & Forbes Development, Inc.*, 368 B.R. 27, 32 (Bankr. C.D. Cal. 2006), citing Black's Law Dictionary (8th ed. 2004); *see also In re JCP Props., Ltd.*, 540 B.R. at 619–620.

40. Importantly, courts have held that establishing a scheme under § 362(d)(4) does ***not*** require showing "ill intent" on the part of the debtor; knowledge that filing bankruptcy will delay a foreclosure is sufficient, regardless the debtor's intent or motive. *In re Brown*, No. 17-10021-KKS, 2017 WL 3493101, at *9 (Bankr. N.D. Fla. Apr. 19, 2017) ("While [the debtor] may not have had ill intent in filing this case because he truly believed the Property was, or should be, his," his bankruptcy was nonetheless part of scheme to hinder or delay creditors, because "he still knew that filing this case would further delay [creditor's] foreclosure"). Furthermore, § 362(d)(4) "does not require that it be the debtor who has created the scheme or carried it out, or even that the debtor be a party to the scheme at all." *In re Dorsey*, 476 B.R. at 267 (emphasis added); *see also In re*

*Young*, 2007 WL 128280, at *9 (holding that the scheme element of § 362(d)(4) was satisfied even though the scheme was orchestrated by non-debtors).

41. Here, both statutory predicates are met, and cause exists to lift the automatic stay under both subsections of § 362(d)(4).

**i. Multiple Bankruptcy Filings - § 362(d)(4)(B)**

42. Again, this is the second bankruptcy case filed to stop SSBT from foreclosing on the same Property: (1) MCITBE's now-dismissed chapter 11 case in the Northern District of Texas, and (2) this case. A scheme to delay or hinder creditors "can be established by the existence of multiple voluntary bankruptcy filings commenced on the eve of state court foreclosure." *In re JCP Props., Ltd.*, 540 B.R. at 619–620. Where multiple bankruptcies are filed on the eve of foreclosure, "***[t]here is no question that part of the scheme was to delay the foreclosure sales***." *In re Young*, 2007 WL 128280, at *9. Indeed, in *Young*, this Court found eve-of-foreclosure bankruptcy filings to constitute a scheme not only to "delay," but also to "hinder" and "defraud" creditors. *Id.* at *9–10.

43. This case, the second chapter 11 case filed to stop SSBT's foreclosure, "***shows the very essence of a scheme to hinder and delay***." *In re JCP Props., Ltd.*, 540 B.R. at 620. The tactics of MCITBE and Jetall, using bankruptcy to stall foreclosure, is the precise abuse that § 362(d)(4) was enacted to stop. *In re Jackson*, 672 B.R. 693, 706–15 (Bankr. E.D. Mich. 2025).

**ii. Transfer of the Property without SSBT's Consent - § 362(d)(4)(B)**

44. The Bankruptcy Code does not define what constitutes "consent" for purposes of § 362(d)(4)(A). The majority of courts follow the plain-language approach articulated in *In re Dorsey*, which holds that a secured creditor need not show that it had any contractual or legal right to oppose the transfer, and that the express statutory language of § 362(d)(4) is clear and unambiguous: if a scheme to delay, hinder, or defraud is shown, and if that scheme involves the

 15069665v1 (76037.00002.000)

transfer of an ownership interest in real property without the secured creditor's consent, then the secured creditor may obtain relief under § 362(d)(4). *In re Dorsey*, 476 B.R. at 269. "This reading of § 362(d)(4) is not an unreasonable restraint on alienation because a property owner still has the ability to effect a transfer of real property prepetition; however, that property owner may lose the protection of the automatic stay pursuant to § 362(d)(4)(A) if he or she failed to obtain the consent of the secured creditor and if the other elements of § 362(d)(4) are satisfied." *Id.*

45. Here, record title to the Property was transferred from Jetall (SSBT's borrower) to MCITBE on or about March 3, 2026, by way of MCITBE's purported foreclosure under its second-lien Deed of Trust. There is no question that SSBT did not consent to this transfer, because SSBT did not even know it happened until more than a month later, after being served with MCITBE's TRO the morning of the April 7 foreclosure sale.

**iii. SSBT is Entitled to Prospective *In Rem* Relief**

46. An order under section 362(d)(4), if recorded in compliance with applicable state real-property recording laws, is binding in any other bankruptcy case purporting to affect the Property that is filed within two years after entry of the order, subject only to a later debtor's right to seek relief for changed circumstances or good cause. *In re Jackson*, 672 B.R. 693, 708–711 (Bankr. E.D. Mich. 2025); *Vardan v. Wells Fargo Bank, N.A.*, 606 B.R. 681, 685 (E.D. Va. 2019); *In re Machado*, No. 21-51329-MMP, 2022 WL 257396 at *7 (Bankr. W.D. Tex. Jan. 27, 2022); *In re Fennell*, No. 17-20095-RLJ13, 2017 WL 7050633 at *5-6 (Bankr. N.D. Tex. Nov. 9, 2017).

47. SSBT requests that it be authorized to record a certified copy of any order granting this Motion in the Real Property Records of Harris County, Texas, so that such Order is binding in any subsequent bankruptcy filings affecting the Property for two years.

**B. The Stay Should Terminate under § 362(d)(1) Because This Case Was Filed in Bad Faith and SSBT Interests Are Not Adequately Protected**

48. Section 362(d)(1) permits the Court to terminate the stay "for cause, including the lack of adequate protection." 11 U.S.C § 362(d)(1).

**i. Bad Faith Filing**

49. Lack of good faith in filing a bankruptcy petition is cause for relief from the automatic stay under section 362(d)(1). *In re WGMJR, Inc.*, 435 B.R. 423, 433 (Bankr. S.D. Tex. 2010) ("The absence of good faith constitutes cause for lifting of the automatic stay.") (citing *Little Creek Dev. Co.*, 779 F.2d 1068); *In re Dixie Broad., Inc.*, 871 F.2d 1023, 1026 (11th Cir. 1989); *Aniel v. HSBC Bank USA, Nat'l Ass'n*, 633 B.R. 368, 383 (N.D. Cal. 2021) (citing *In re Arnold*, 806 F.2d 937, 939 (9th Cir. 1986)); *In re Hyde*, 227 B.R. 170, 171 (Bankr. W.D. Ark. 1998); *In re Long Bay Dunes Homeowners Ass'n, Inc.*, 246 B.R. 801, 806 (Bankr. D.S.C. 1999).

50. The Fifth Circuit assesses good faith on "a conglomerate of factors rather than on any single datum," reflecting the recurring hallmarks of a bad-faith filing identified in *Matter of Little Creek Dev. Co.*, 779 F.2d 1068 (5th Cir. 1986) ("***Little Creek***"): the debtor has one asset—a tract of real property—encumbered by the secured creditor's lien; there are no employees except the principals; there is little or no cash flow and no income to fund a plan or make adequate-protection payments; there are few, small unsecured claims; the property has been posted for foreclosure; and bankruptcy offers the only means of forestalling loss of the property. *Little Creek*, 779 F.2d at 1072–73. The "new debtor syndrome"—"a one-asset entity… created or revitalized on the eve of foreclosure to isolate the insolvent property and its creditors"—"exemplifies" bad faith, and where such an entity is used, "the inference of bad faith is particularly strong." *In re 1701 Com., LLC*, 477 B.R. 652, 657–58 (Bankr. N.D. Tex. 2012); *Little Creek*, 779 F.2d at 1072–73. One bankruptcy court has summarized the *Little Creek* factors as follows:

(1) the Debtor has one asset, which is a tract of real property;

(2) the Debtor has few unsecured creditors whose claims are small in relation to the claims of the secured creditors;

(3) the Debtor has few employees;

(4) the property is the subject of a foreclosure action as a result of arrearages on the debt;

(5) the Debtor's financial problems involve essentially a dispute between the Debtor and a secured creditor which can be resolved in a pending state court action; and

(6) the timing of the Debtor's filing evidences an intent to delay or frustrate the legitimate efforts of the Debtor's secured creditors to enforce their rights.

*In re McMahan*, 481 B.R. 901, 916 (Bankr. S.D. Tex. 2012) (citing *Little Creek*, 779 F.2d 1068). It should also be noted that, while perhaps subsumed within the foregoing factors, the *Little Creek* Court also identified the following as pertinent indicia of bad faith:

(i) "little or no cash flow, and no available sources of income to sustain a plan of reorganization or to make adequate protection payments;" and

(ii) "[b]ankruptcy offers the only possibility of forestalling loss of the [Debtor's] property."

*Little Creek*, 779 F.2d at 1072-73.

51. The overarching inquiry in assessing good faith is whether the bankruptcy case serves any valid purpose or presents any potential benefit to the creditors. *Id.*; *In re Nat'l Rifle Ass'n of Am.*, 628 B.R. 262, 270-71 (Bankr. N.D. Tex. 2021). The *Little Creek* factors are meant to aid in determining whether the bankruptcy filing serves any valid purpose. *Id.* Importantly, all factors need not be present, and the Court may place more weight on one factor than another. *Id.*; *McMahan*, 481 B.R. at 916; *Elmwood Dev. Co. v. Gen. Elec. Pension Trust (Matter of Elmwood Dev. Co.)*, 964 F.2d 508, 510 (5th Cir. 1992).

52. Applying the *Little Creek* factors to the present case, it is readily apparent that this case serves no valid bankruptcy purpose whatsoever:

- ***Single real-property asset***. Jetall's only scheduled asset is a contingent equitable interest in the Property; it reports $0.00 in all other assets.

- ***No employees, no cash flow, no income***. Jetall reports no cash and no business revenue in 2024, 2025, or 2026. It has no means to fund a plan or make adequate-protection payments.

- ***Few or no unsecured creditors***. Jetall lists no unsecured creditors; its only scheduled creditors are an insider (MCITBE) and SSBT.

- ***Property posted for foreclosure***. The Property was posted for a November 3, 2026 foreclosure sale, as discussed herein above.

- ***Two-party dispute***. This is in substance a dispute between Jetall and its secured lender, SSBT, over the foreclosure.

- ***Timing evidences intent to delay***. Jetall filed on the very day of the posted sale, literally minutes before SSBT was to begin the sale, after MCITBE and Choudhri were unable to obtain any relief in MCITBE's chapter 11 case or from the Harris County District Court to stop the foreclosure.

53. A debtor with "no going concern to preserve, …no employees to protect, and …no hope of rehabilitation" is not a proper candidate for the bankruptcy laws. *Little* Creek, 779 F.2d at 1073. Filing "merely to obtain a tactical litigation advantage is not a valid bankruptcy purpose," because courts universally demand more of Chapter 11 petitions than a naked desire to stay pending litigation. *In re Roman Cath. Church of Archdiocese of New Orleans*, 632 B.R. 593, 599 (Bankr. E.D. La. 2021).

**ii. Lack of Adequate Protection**

54. Adequate protection is required to "safeguard the secured creditor from diminution in the value of its interest during the Chapter 11 reorganization." *In re 495 Cent. Park Ave. Corp.*, 136 B.R. 626, 631 (Bankr. S.D.N.Y. 1992); *see also United Sav. Ass'n of Texas v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 370 (1988). "Adequate protection ensures that a creditor receives the value for which it bargained prebankruptcy." To establish a prima facie case for lifting the stay based on a lack of adequate protection, creditors must offer "proof of either (1)

a decline in the value of the Collateral or (2) the threat of such a decline." *In re Vita Craft Corp.*, 625 B.R. 491, 503 (Bankr. D. Kan. 2020).

55. Unpaid ad valorem property taxes continue to accrue on the Property, giving rise to statutory tax liens that take priority over SSBT's first-lien Deed of Trust, *see* TEX. TAX CODE §§ 32.01(d), 32.05(b), which gives rise to "cause" for relief from the stay under Bankruptcy Code section 362(d)(1). *See, e.g., In re Ainsworth*, No. 17-20418, 2018 WL 5304719, at *10 (Bankr. S.D. Tex. Oct. 23, 2018) ("[A] depreciation in value of NewFirst's interest arises because its interest is subject to the continuing, senior liens for ad valorem taxes.… Consequently, … Ainsworth must make adequate protection in payments in an amount equal to that depreciation."); *In re Anthem Communities/RBG, LLC*, 267 B.R. 867, 871 (Bankr. D. Colo. 2001) ("[T]he erosion of the creditor's position or of a threatened erosion… may be shown through evidence of declining property values,… the non-payment of taxes or other senior liens, failure to insure the property, failure to maintain the property, or other factors that may jeopardize the creditor's present position."); *Vita Craft Corp.*, 625 B.R. at 503 (same); *see also In re Pena*, No. 14-09799 (ESL), 2016 WL 1043736, at *5 (Bankr. D.P.R. Mar. 15, 2016) ("there is a continuous diminution of the estate because payments are not being made on the secured claim and there is no evidence that payments are being made on the property taxes."); *In re Infinite Swans, LLC*, No. BR 11-22880 RKM, 2011 WL 2293303, at *2 (Bankr. D. Utah June 9, 2011) ("the Property is subject to additional risk of diminution on account of, among other things, the real property taxes that are accruing"). It should also be noted that Debtor's failure to pay property taxes after the Petition Date is a specifically enumerated cause for dismissal or conversion of this case under section 1112(b) of the Bankruptcy Code. *See* 11 U.S.C. § 1112(b)(4)(I); *In re Premier Golf Properties, LP*, 564 B.R. 710, 727 (Bankr. S.D. Cal. 2016). The senior, continually accruing ad valorem tax

liens that prime SSBT's first lien, together with unpaid post-petition interest and the Debtor's failure to make any payment to SSBT, are steadily eroding SSBT's protected position—a recognized basis for finding a threatened decline in the value of a secured creditor's interest. *In re Anthem Communities/RBG, LLC*, 267 B.R. 867, 874 (Bankr. D. Colo. 2001).

**C. The Stay Should Terminate under § 362(d)(2) Because Jetall Has No Equity in the Property and the Property Is Not Necessary to Any Effective Reorganization**

56. Section 362(d)(2) requires relief where the debtor has no equity in the property and the property is not necessary to an effective reorganization. 11 U.S.C. § 362(d)(2). Where the secured claims against property exceed its value, the debtor has no equity. *In re JCP Props., Ltd.*, 540 B.R. at 616–17. Jetall schedules only a contingent equitable interest in the Property and reports the value of its interest as $0.00. Jetall bears the burden of showing a "reasonable possibility of a successful reorganization within a reasonable time." *Id. at* 616–17. With no title, no income, no employees, and no operations, Jetall cannot carry that burden—there is no business to reorganize. *In re Humble Place Joint Venture*, 936 F.2d 814, 818 (5th Cir. 1991); *Little Creek*, 779 F.2d at 1073.

## VI. <u>REQUEST FOR ADEQUATE PROTECTION</u>

57. SSBT hereby requests adequate protection of its interests in the Property and all other assets of Debtor, including, without limitation, any of SSBT's cash collateral, pursuant to section 363(e) of the Bankruptcy Code. SSBT requests that Debtor be prohibited from using or disposing of any of SSBT's collateral unless SSBT's interests are adequately protected in accordance with the Bankruptcy Code. SSBT further requests allowance and payment of a superpriority claim under Bankruptcy Code section 507(b) to the extent of any failure of such adequate protection.

58. SSBT does not consent to Jetall's use of cash collateral.

## VII. REQUEST FOR WAIVER OF APPLICABLE STAY PERIODS

59. SSBT requests that any orders granting the relief sought herein be effective immediately upon entry, notwithstanding Bankruptcy Rule 4001(a)(3) or any similar provisions of the Bankruptcy Code or Bankruptcy Rules that might otherwise apply to stay such orders.

## VIII. RESERVATION

60. SSBT reserves the right to amend or supplement this Motion for any reason prior to the hearing. SSBT expressly reserves all its rights under its loan documents and applicable law.

## IX. PRAYER

WHEREFORE, PREMISES CONSIDERED, SSBT respectfully requests that the Court grant this Motion and enter an order, substantially in the form attached hereto, terminating the automatic stay as to the Property and authorizing SSBT to immediately exercise all available remedies under its Loan Documents and applicable law, including, without limitation, foreclosing on the Property, and granting SSBT such other and further relief to which it is justly entitled.

DATED: November 6, 2026

Respectfully submitted,

*/s/ Kyle Woodard*

Kyle Woodard (SBOT 24102661)
**KANE RUSSELL COLEMAN LOGAN PC**
901 Main Street, Suite 5200
Dallas, Texas 75202
Telephone: (214) 777-4200
Email: kwoodard@krcl.com

- and -

Jim D. Aycock (SBOT 24034309)
**THE AYCOCK LAW FIRM, PLLC**
5850 San Felipe St., Suite 500, #1020
Houston, Texas 77057
Telephone: (254) 253-5460
Email: jim@aycock.law

***Counsel for Security State Bank & Trust***

## CERTIFICATE OF SERVICE

This is to certify that on November 6, 2026, a true and correct copy of this Motion was filed with the Court and served (i) via the Court's CM/ECF notification system upon all parties registered to receive such electronic notices in this case and (ii) upon the following parties in the manner indicated:

**Via first-class mail, postage prepaid**
JetAll/Croix Properties, LP
P.O. Box 132977
The Woodlands, TX 77393

**Via e-mail**
Courtney Ann Vincent
Vincent Law, PLLC
1035 Dairy Ashford, Suite #145
Houston, TX 77079
Email: info@vincentlawpllc.com

**Via e-mail**
Jana Smith Whitworth
Office of United States Trustee
515 Rusk Street, Suite 3516
Houston, TX 77002
Email: jana.whitworth@usdoj.gov

*/s/ Kyle Woodard*
Kyle Woodard

 15069665v1 (76037.00002.000)

## Exhibit Index

***MCITBE Chapter 11 Case***

**Ex. A:** Order Dismissing Ch. 11 Case with Prejudice for 180 Days [No. 26-32580, ECF #228]

**Ex. B:** Partial Hearing Transcript (Witness Testimony/Court Ruling), October 15, 2026, Hr'g on U.S. Trustee's Motion to Dismiss

**Ex. C:** Joint Motion for Reconsideration [No. 26-32580, ECF #234]

**Ex. D:** Joint Emergency Motion for Stay Pending Reconsideration [No. 26-32580, ECF #235]

**Ex. E:** Order Denying Joint Reconsideration and Stay Motions [No. 26-32580, ECF #240]

**Ex. F:** Hearing Transcript, November 3, 2026 – In re: MCITBE, LLC, No. 26-32580-mvl11

**Ex. G:** MCITBE Voluntary Chapter 11 Petition filed June 10, 2026 [No. 26-32580, ECF #1]

***Harris County TRO Applications (re: November 3 Foreclosure)***

**Ex. H:** MCITBE's Renewed Emergency TRO Application, filed November 2, 2026

**Ex. I:** Choudhri's Emergency TRO Application, filed November 2, 2026

**Ex. J:** Order Denying MCITBE TRO Application, entered November 3, 2026

**Ex. K:** Order Denying Choudri TRO Application, entered November 3, 2026

**Ex. L:** TRO Hearing Transcript, November 2, 2026

**Ex. M:** TRO Hearing Transcript, November 3, 2026

**Ex. N:** Email from Ali Choudhri dated November 3, 2026, at 10:05am

**Ex. O:** Email from debtor's counsel, Courtney Vincent, dated November 3, 2026, at 10:17am

***Prior Harris County TROs (Feb. – May 2026)***

**Ex. P:** Order Granting Pl.'s Emergency TRO Application signed Feb. 2, 2026

**Ex. Q:** Order Granting Defendant's Rule 12 Motion signed Mar. 2, 2026

**Ex. R:** Order Granting Pl.'s Emergency TRO Application signed Apr. 2, 2026

**Ex. S:** Order Granting Defendant's Emergency Motion to Vacate TRO signed April 14, 2026

**Ex. T:** Order Granting Pl.'s Emergency Motion for TRO signed May 5, 2026

***SSBT First-Lien Loan Documents***

**Ex. U:** Real Estate Lien Note dated October 25, 2023, by Jetall, as maker, and SSBT, as payee

**Ex. V:** Deed of Trust dated October 25, 2023, by Jetall, as grantor, Daniel Kemp, as trustee, and SSBT, as beneficiary, recorded at Harris County RP-2023-412498

**Ex. W:** Extension of Real Estate Note and Lien dated effective October 25, 2024, between Jetall, as grantor, and SSBT, as lender; and Memorandum of Extension of Real Estate Note and Lien recorded on November 11, 2024, at Harris County RP-2024-421572

**Ex. X:** Extension of Real Estate Note and Lien dated effective January 23, 2025, between Jetall, as grantor, and SSBT, as lender; and Memorandum of Extension of Real Estate Note and Lien recorded on March 6, 2025, at Harris County RP-2025-81428

**Ex. Y:** Letter dated September 22, 2025, re: Notice of Past Due Payments

**Ex. Z:** Letter dated October 28, 2025, re: Notice of Default and Acceleration of Note

**Ex. AA:** Appointment of Substitute Trustee dated November 12, 2025, by SSBT recorded at Harris County RP-2025-449999

**Ex. BB:** SSBT Foreclosure Postings

**BB-1:** Notice of Substitute Trustee's Sale dated November 19, 2025, by SSBT (Jan. 2026 sale) recorded at Harris County RP-2025-449999

**BB-2:** Notice of Substitute Trustee's Sale dated January 9, 2026, by SSBT (Feb. 2026 sale) recorded at Harris County FRCL-2026-286

**BB-3:** Notice of Substitute Trustee's Sale dated March 4, 2026, by SSBT (Apr. 2026 sale) recorded at Harris County FRCL-2026-1561

**BB-4:** Notice of Substitute Trustee's Sale dated May 20, 2026, by SSBT (Jul. 2026 sale) recorded at Harris County FRCL-2026-3557

**BB-5:** Notice of Substitute Trustee's Sale dated August 6, 2026, by SSBT (Sept. 2026 sale) recorded at Harris County FRCL-2026-5719

**BB-6:** Notice of Substitute Trustee's Sale dated September 3, 2026, by SSBT (Oct. 2026 sale) recorded at Harris County FRCL-2026-6509

**BB-7:** Notice of Substitute Trustee's Sale dated October 13, 2026, by SSBT (Nov. 2026 sale) recorded at Harris County FRCL-2026-7668

***MCITBE Second-Lien and Related Documents***

**Ex. CC:** Second Lien Real Estate Lien Note dated Oct. 25, 2023, by Jetall payable to MCITBE

**Ex. DD:** Second-Lien Deed of Trust dated October 25, 2023, by Jetall, as grantor, Patrick T. Murphy, as trustee, and MCITBE, as lender [Harris County RP-2023-412499]

**Ex. EE:** Substitution of Trustee dated February 10, 2026, by MCITBE [Harris County RP-2026-50125]

**Ex. FF:** Notice of Substitute Trustee's Sale dated February 10, 2026, by MCITBE [Harris Co. RP-2026-50126]

**Ex. GG:** Notice of Resignation of Substitute Trustee dated February 24, 2026 [Harris County RP-2026-78211]

**Ex. HH:** Substitute Trustee's Deed signed March 11, 2026, dated effective as of March 3, 2026, by Manfred Sternberg [Harris County RP-2026-91935]

**Ex. II:** Substitution of Trustee dated May 5, 2026, by MCITBE [Harris County RP-2026-174171]

***Additional Exhibits***

**Ex. JJ:** Jetall's Voluntary Petition and Schedules [ECF #1]